CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

July 15, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ Hannah Warren
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

EVA MARIE KATHLEEN JOHNSON,    )
    )
    Plaintiff,    )
    )    Civil Action No. 7:26-cv-10056
    v.    )
    )    By: Elizabeth K. Dillon
SMYTH COUNTY, VIRGINIA, *et al.*,    )    Chief United States District Judge
    )
    Defendants.    )

**MEMORANDUM OPINION**

Eva Marie Kathleen Johnson, proceeding pro se and without paying a filing fee, brings twelve counts against twenty-eight named and ten unnamed defendants, including a county, a jail, four judges, seven police officers from five departments, two social workers, her daughter, and ten of her neighbors. (Am. Compl., Dkt. No. 10.) Ten of the counts allege a custom or conspiracy to violate Johnson's constitutional rights, one claims a failure to accommodate her disability under the Americans with Disabilities Act (ADA) and Rehabilitation Act, and the last asserts nine theories under Virginia state law. (*Id.* ¶¶ 90–116.) Johnson submits dozens of exhibits to support her pleading. (Dkt. Nos. 4, 17, 18, 30.) She moves to proceed in forma pauperis (Dkt. Nos. 2, 29), for a temporary restraining order and preliminary injunction (Dkt. Nos. 3, 8, 12), for sanctions (Dkt. Nos. 7, 11, 14), for referral to the U.S. Attorney's Office (Dkt. No. 13), for partial summary judgment (Dkt. No. 14), to compel discovery (Dkt. Nos. 15, 24), for a protective order and stay of state-court proceedings (Dkt. Nos. 16, 32), to clarify her claims against the judges (Dkt. No. 21), for appointment of a guardian ad litem for other people's children (Dkt. No. 26), to compel the production of foster care records and for in camera review

of these records (Dkt. Nos. 25, 27), to challenge the courthouse's cellphone policy (Dkt. No. 30), and to withdraw some motions (Dkt. No. 33).

The court will grant Johnson's motion to proceed in forma pauperis, but, because she fails to state a claim on which relief may be granted, the court must dismiss her case without prejudice.

## I.  BACKGROUND

Johnson, a disabled veteran with cardiovascular conditions and complex post-traumatic stress disorder, bought a home in Saltville, Virginia, "as an outsider with no prior local relationships" in July 2023.  (Am. Compl. ¶ 34.)  Her relationship with her neighbors deteriorated in 2024.  In July, she reported a shotgun discharge toward her property, but the police did not help her, and a magistrate denied her a protective order while granting one to her neighbor, compelling her to surrender her firearms and concealed handgun permit.  In August, a different neighbor threatened her and discharged a shotgun, and protective orders were granted to both her and the neighbor.  And, in December, she and a third neighbor appeared for "a protective order hearing arising from active shooting incidents," but the judge ruled for the neighbor, although Johnson was found not guilty of contempt.  (*Id.* ¶¶ 35–42.)

In February 2025, Johnson's adult daughter, who had made accusations against Johnson in the past, traveled from Tennessee to Virginia to petition for a protective order and file a civil suit against her.  A judge granted the order, and Johnson was arrested for harassment in Tennessee, but the charge was dismissed.  A permanent restraining order was entered against the daughter, but county officials never served it.  In March, the daughter and two other individuals "used interstate electronic communications to coordinate the filing of false charges against [Johnson] in Virginia."  (*Id.* ¶¶ 43–46.)  At some point, the daughter published Johnson's name,

address, and telephone number on Facebook and asked the public to contact Johnson and the police, but a judge did not address this as a safety threat.  (*Id.* ¶¶ 47–50.)

In March 2026, Johnson discovered that, sometime after October 2024, other neighbors had installed on their property a "motion-activated panning camera" that "actively followed movement and recorded [Johnson] on her property . . . , including into her home and dressing area, where she was recorded while unclothed."  Johnson confronted the neighbors, who gave no response, and Johnson "tested the camera by flashing it," whereupon an officer visited the neighbors, viewed the footage, and took no further action.  (*Id.* ¶¶ 51–52.)  In April, a court issued an emergency protective order against one of the neighbors, but it was never served.  The same day, another of these neighbors "attempted to run over [Johnson]'s livestock in the driveway," and others of these neighbors filed for a protective order "to cover up" his actions.  Over the next two months, "[n]o fewer than nine officers from county, city, and state police" attempted to serve the neighbors' order on Johnson.  (*Id.* ¶¶ 53–57.)

On June 7, 2026, an officer relied on the neighbors' footage to file a criminal complaint of indecent exposure against Johnson.  The complaint stated that Johnson had "an unserved preliminary protective order" against her, but the unserved order was really against the one neighbor.  (*Id.* ¶¶ 58–59.)  The next day, the neighbors contacted the police when their camera captured Johnson leaving her residence, and Johnson was arrested within ten to twenty minutes.  She was booked into jail at about 1:30 PM and held overnight.  Despite her medical conditions, the only treatments she received were two high blood-pressure readings while she was experiencing atrial fibrillation with chest pain.  Johnson was released on $120 bail, which the jail refused to accept from her friend, insisting that Johnson "contact a bondsman from inside her

3

cell—which was impossible." (*Id.* ¶¶ 61–64.)  About this time, the neighbors locked their camera so it would only pan across Johnson's driveway.  (*Id.* ¶ 60.)

Amid all this, allegedly, a police officer from a neighboring family failed to disclose a conflict of interest (*id.* ¶ 17), two social workers "denied or delayed [Johnson]'s heating assistance across three winters" (*id.* ¶ 22), a judge awarded a wrongful judgment against her, which resulted in a lien on her home (*id.* ¶ 23), multiple judges mishandled her recusal motions (*id.* ¶¶ 23–24), yet two more neighbors' dogs entered her home, bit her dog, "destroyed her laptop, and killed her chickens without citation" by an animal-control officer (*id.* ¶¶ 15, 32), and Johnson fortified her property (*id.* ¶ 117).

Finally, Johnson filed this federal suit on June 22, 2026.  The next day brought three allegedly retaliatory developments.  First, Johnson was served fifteen animal-control citations at a protective-order hearing, and she learned that her neighbors' camera had been on for at least six months.  Second, her neighbor claimed—allegedly, knowingly falsely—that Johnson had violated her protective order the day before, when Johnson was not home.  Last, a warrant for her arrest was issued for this alleged violation, and Johnson was pulled over and served the warrant, but she was not arrested.  (*Id.* ¶¶ 65–73.)

Johnson discerns, among several theories of wrongdoing, a custom and conspiracy of her daughter, neighbors, judges, and police selectively enforcing laws and petitioning for, granting petitions for, serving, and enforcing retaliatory protective orders against her while refusing to grant and serve orders for her protection.  She takes particular exception to her neighbors' camera surveillance.  Johnson's arrest and detention last month were, she says, the culmination of all this.  (*Id.* ¶¶ 74–89.)  She sues everyone mentioned above under 42 U.S.C. §§ 1983 and 1985(3), the Second, Fourth, and Fourteenth Amendments, the ADA and Rehabilitation Act, and

Virginia state law.  (*Id.* ¶¶ 90–116.)  She seeks declaratory and injunctive relief and compensatory and punitive damages for her emotional, physical, economic, and other harms. (*Id.* ¶¶ 117–18.)

## II.  LEGAL STANDARDS

A party instituting a civil action must usually pay a filing fee, 28 U.S.C. § 1914, but the court may authorize the party to proceed without prepayment, in forma pauperis, if she submits an adequate affidavit of her poverty, § 1915(a)(1).  The court must dismiss the case at any time if the court determines that the action fails to state a claim on which relief may be granted. § 1915(e)(2)(B)(ii).

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court may consider any documents attached or incorporated into the complaint by explicit reference.  *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015).  The court must construe all facts and reasonable inferences "in the light most favorable" to the plaintiff, *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023), but need not accept "unwarranted inferences, unreasonable conclusions, or arguments," *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *E. Shore Markets, Inc. v. J.D. Assocs.*, 213 F.3d 175, 180 (4th Cir. 2000)).

A pro se complaint must be construed liberally.  *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016).  "Principles requiring generous construction of *pro se* complaints are not, however, without limits."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Even a pro se complaint must "state a claim to relief that is plausible on its face."  *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

III.  ANALYSIS

Johnson's financial affidavit (Dkt. Nos. 2, 29) satisfies the court that she cannot pay the

filing fee and should be allowed to proceed in forma pauperis.  28 U.S.C. § 1915(a)(1).  But the

court also finds that her complaint fails to state a claim on which relief may be granted.

§ 1915(e)(2)(B)(ii).

At the outset, the court observes that hundreds of pages of "additional evidence," some

more clearly related to the Amended Complaint than others, have been filed on the docket.

Doubtless, it was not Johnson's intention to clutter the record, and the court appreciates her

attempts to number some pages as exhibits.  But the court cannot sift through such a volume of

paper without more organization, and the record is now in such a state that the court cannot tell

what evidence supports which filings.  Accordingly, the court has not considered the exhibits in

weighing the sufficiency of Johnson's factual allegations.

Before addressing the deficiencies of Johnson's claims against each defendant, the court

sketches four overarching difficulties for Johnson.  First, this is a federal court of limited

jurisdiction, so it cannot remedy every state-law wrong brought to its attention.  *See Hain*

*Celestial Grp., Inc. v. Palmquist*, 607 U.S. 421, 428 (2026).  Second, 42 U.S.C. § 1983 and the

Second, Fourth, and Fourteenth Amendments chiefly relate to state, not private, action.  *See*

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 927–39 (1982); *Chatrie v. United States*, No.

25-112, slip op. at 10–12 (U.S. June 29, 2026); *Wolford v. Lopez*, No. 24-1046, slip op. at 13

(U.S. June 25, 2026).  A plaintiff suing a private defendant under these theories must plausibly

claim that this general rule should not apply.  Third, in a federal civil action, defendants may

only be joined if "any right to relief is asserted against them jointly, severally, or in the

alternative with respect to or arising out of the same transaction, occurrence, or series of

6

transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). So, a plaintiff may not join everyone who ever slighted her in the same lawsuit. Finally, the federal pleading standard requires even a pro se plaintiff to allege enough particular facts to plausibly satisfy each element of her claims. *See Jackson*, 775 F.3d at 178. Threadbare recitations and offhand allegations of a few suspicious facts will generally not suffice to state a claim on which relief may be granted.

These problems so permeate Johnson's amended complaint as to be fatal to it. In short, it is not plausible, on the facts Johnson alleges, that all these public and private defendants have violated her federal rights as part of a common custom or conspiracy. Johnson's subjective impression of such an unlikely scheme cannot plausibly state a federal claim without more particular factual substantiation.

The court turns to the major flaws in Johnson's claims against each defendant. Economy counsels against exploring every defect exhaustively. But this brief treatment, in light of the common difficulties above, should adequately explain why relief may not be granted against each defendant.

## A. Smyth County, Virginia

Johnson alleges that Smyth County, Virginia, is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for its customs, policies, and practices of "selectively enforcing laws against outsiders while protecting established residents," "granting protective orders to established residents while denying or failing to serve orders protecting [Johnson]," "administrative errors and arbitrary disqualifications in fuel assistance that disproportionately affects disabled residents," "using excessive law enforcement resources against [Johnson] while

ignoring her legitimate complaints," "improperly serving protective orders," and "destroying evidence." (Am. Compl. ¶ 107.)

"[A] municipality is responsible under Section 1983 only for constitutional violations caused by its own policies or practices, not for the isolated misconduct of individual employees." *Mullen v. Town of Sunset Beach*, 175 F.4th 466, 472 (4th Cir. 2026). This requires a plaintiff to allege "a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). Where the plaintiff urges a theory of deliberate indifference, she "generally must demonstrate a pattern of 'persistent and widespread' similar constitutional violations sufficient to place policymakers on notice that their failure to adopt appropriate policies or training would likely result in constitutional injury." *Mullen*, 175 F.4th at 473 (quoting *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 402–03 (4th Cir. 2014)). "Thus, a plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of her specific injury or that it was the moving force behind her deprivation." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999), *abrogated on other grounds by*, *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam).

Johnson fails to plausibly claim Smyth County's liability by these standards. Even if the alleged selective enforcement, protective orders, and administrative errors violated her constitutional rights, she alleges nothing concrete to suggest, at the municipal level, either a positive decision to violate these rights or a pattern of violations so "persistent and widespread" as to make the County liable for failing to put the violations to an end. *Owens*, 767 F.3d at 402–03. Rather, Johnson relies on "scattershot accusations" of "the isolated misconduct of individual employees" in just the way *Monell* forbids. *Carter*, 164 F.3d at 218; *Mullen*, 175 F.4th at 472.

Moreover, judges, magistrates, state police officers, and sheriffs' deputies are not County employees.

For the reasons discussed below in closer connection with the individual officials, Johnson also fails to adequately allege that the conduct she challenges violated federal law at all. Because she sufficiently pleads neither the unlawfulness of this conduct nor that Smyth County may be held liable for it, she fails to state a claim against the County.

**B. Law Enforcement Officials**

Johnson sues nine law enforcement officials both in their individual and in their official capacities. To proceed against a person under 42 U.S.C. § 1983, Johnson must particularly allege his or her personal involvement in any wrongdoing. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017). And an official-capacity claim functions as a claim against the entity for which an employee works. *See Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985). As discussed above, the amended complaint fails to state a claim against Smyth County.

Johnson sues Lt. Kristy Moore, a Smyth County Animal Control officer who allegedly "issued four citations against [Johnson] on court hearing dates, testified she viewed exculpatory video but failed to produce it and declined to act when neighbors' animals killed [Johnson]'s chickens, entered her home, and bit her dog." (Am. Compl. ¶ 15.) But Johnson supplies no reason to suspect that Moore lacked the requisite authorization and cause to issue the citations, that her testimony was false, or that her failure to produce the video was wrongful. And Johnson does not provide any theory by which she should be entitled to seek redress for an official's decision not to enforce a law. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 766–67 (2005); *Pinder v. Johnson*, 54 F.3d 1169, 1174 (4th Cir. 1995); *Trump v. Montgomery Cnty. Sheriff*, No. 7:10-cv-00142, 2010 WL 1278596, at *1 (W.D. Va. Mar. 31, 2010), *aff'd*, 393 F.

9

App'x 981 (4th Cir. 2010).  Accordingly, Johnson fails to state a claim against Moore in her individual capacity.  Johnson likewise fails to state a claim against Moore in her official capacity—that is, against her employer, Smyth County—for the reasons discussed above.

Deputy Cantara, a Smyth County Sheriff's Office deputy, allegedly "participated in three law enforcement visits to [Johnson]'s property within one hour and served [Johnson] with Cody Daughtry-Hernandez's protective order the same night [Johnson]'s order was denied."  (Am. Compl. ¶ 16.)  But, again, Johnson does not allege that Cantara lacked authorization or cause for the visits, and serving the protective order seems to have justified at least one of them. Moreover, deputy sheriffs do not issue protective orders in Virginia, and Johnson does not assert that Cantara bore responsibility for any protective order.  So, her individual-capacity allegations against Cantara are insufficient.  She also fails to state an official-capacity claim because Cantara is an employee of the Sheriff, who is a constitutional officer.  Constitutional officers are entitled to Eleventh Amendment immunity in a suit for damages.  *See* Va. Const. art. VII, § 4; *BLM of Shenandoah Valley, LLC v. Augusta Cnty.*, No. 5:21-cv-00060, 2023 WL 2505493, at *6 (W.D. Va. Mar. 14, 2023); *Francis v. Woody*, No. 3:09-cv-00325, 2009 WL 1442015, at *6 (E.D. Va. May 22, 2009).

Sgt. Serber is another Smyth County Sheriff's Office deputy.  Johnson alleges that "he arrived at [Johnson]'s property without identifying himself or stating a purpose.  Serber family property adjoins [Johnson]'s—an undisclosed conflict of interest."  (Am. Compl. ¶ 17.)  Again, Johnson fails to allege any impropriety in this undeclared arrival and nondisclosure; she does not suggest how this conduct breached any legal duty or how any breach harmed her.  So, this individual-capacity claim cannot proceed.  Nor can the official-capacity claim, for the same

reason that the official-capacity claim against Cantara cannot.  *See BLM of Shenandoah Valley*, 2023 WL 2505493, at *6.

Johnson alleges that Lt. Mark Blevins, a Marion Police Department officer, "confronted [Johnson] in a threatening manner at the Marion police station."  (Am. Compl. ¶ 18.)  Without more particular allegations, the court cannot reasonably infer that this threatening confrontation violated federal law.  And, for the same reasons she fails to establish the County's *Monell* liability, Johnson also fails to allege that the Town of Marion was responsible for any sort of unlawful policy or practice.  *See Davis v. Lancaster*, No. 7:22-cv-00410, 2022 WL 17490087, at *4 (W.D. Va. Dec. 7, 2022).  Johnson's allegations against Blevins fail to state an individual- or official-capacity claim.

Trooper A. Ball is a Virginia State Police officer.  Johnson alleges that he filed a criminal complaint against her for indecent exposure, that the complaint was "based entirely on video evidence obtained through [her neighbors]' unlawful surveillance," and that the complaint contained "a material misrepresentation: that [Johnson] 'has an unserved preliminary protective order' against her—when in fact, [Johnson] is the protected party and [her neighbor] is the restrained party."  (Am. Compl. ¶¶ 19, 58, 59.)  Johnson, invoking *Franks v. Delaware*, 438 U.S. 154 (1978), alleges that this misrepresentation "was made knowingly or with reckless disregard for the truth" and "was necessary to the finding of probable cause."  (*Id.* ¶¶ 96–99.)  But neither the surveillance nor the alleged misrepresentation gives rise to a reasonable inference that Ball violated federal law.  "In order to run afoul of the Fourth Amendment, . . . the Government must do more than passively accept or acquiesce in a private party's search efforts.  Rather, there must be some degree of Government participation in the private search."  *United States v. Jarrett*, 338 F.3d 339, 344 (4th Cir. 2003).  Evidence collected without such government participation,

11

however unlawfully, may support a criminal investigation or prosecution without offending the Fourth Amendment. *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Johnson does not allege any government participation at all. Nor does she give any reason to suspect that Ball's alleged misrepresentation was knowing or reckless. Again, Johnson fails to allege sufficient factual details to make her individual-capacity claims plausible. And the Virginia State Police are entitled to Eleventh Amendment immunity, so Johnson's official-capacity claims for damages must fail. *See Benton v. Layton*, 628 F. Supp. 3d 661, 666–67 (E.D. Va. 2022).

Trooper Russell is another Virginia State Police officer, who allegedly "issued a citation to [Johnson] that was later dismissed." (Am. Compl. ¶ 20.) The citation's ultimate dismissal says nothing—let alone anything constitutionally wrongful—about the propriety of its initial issuance, so this individual-capacity claim fails. And, for the same Eleventh Amendment reason as relates to Ball, the official-capacity claim against Russell likewise fails.

Officer Perry is a Saltville Police Department officer. He allegedly arrested Johnson "within 20 minutes of being notified by [her neighbors]—using their unlawful surveillance—that [Johnson] had left her residence." (Am. Compl. ¶ 21.) Again, police use of privately acquired information, however unlawfully acquired, does not offend the Constitution. *See Jacobsen*, 466 U.S. at 113. Lacking any further allegation that this arrest lacked probable cause, it cannot be the basis of an individual-capacity claim, and the official-capacity claim (effectively against the Town of Saltville) fails for the same *Monell* reasons for which the official-capacity claim against the Town of Marion fails. *See Davis*, 2022 WL 17490087, at *4.

"Amy Schultz and Emerson Oteri are Smyth County Social Services caseworkers who denied or delayed [Johnson]'s heating assistance across three winters," allegedly as part of a "[s]ystemic bad-faith denial of heating assistance." (Am. Compl. ¶¶ 22, 92.) This barebones

12

assertion of bad faith does not give rise to a reasonable inference of any impropriety on the part of these defendants, Smyth County, or its Department of Social Services, let alone as part of a broader policy or practice, so Johnson's individual- and official-capacity claims against them cannot proceed without further factual allegations.

Finally, Johnson alleges that "state actors operating government services, courthouses, and law enforcement" "failed to accommodate" her atrial fibrillation, hypertension, and complex post-traumatic stress disorder under the ADA and Rehabilitation Act. (*Id.* ¶¶ 105–06.) Perhaps these were the ten John Does to whom Johnson alludes in the style of her Amended Complaint; the court has no way of knowing. In any event, Johnson's failure-to-accommodate claims against these defendants must fail for want of factual substantiation. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

## C. Judges

Judges are absolutely immune from any suit for money damages, even for malicious or corrupt conduct, with just two exceptions: "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (citation omitted). But judges may be sued for prospective injunctive relief under 42 U.S.C. § 1983, although a federal court should remember the restraining principles of comity and federalism when called on to enjoin a state judge. *Pulliam v. Allen*, 466 U.S. 522, 539–42 (1984).

Johnson sues four judges in their official capacities. Judge Lee, of the Smyth County General District Court, allegedly awarded a judgment of $1,800 against Johnson "without evidentiary basis," which "was subsequently determined to be wrongful." He ignored Johnson's

recusal motion and did not address Johnson's daughter's Facebook posts to Johnson's satisfaction. (Am. Compl. ¶ 23.) Judge Campbell, of the Smyth County Circuit Court, took no action on a motion to recuse himself from a dog citation case and dismissed recusal motions against other judges. (*Id.* ¶ 24.) Judge Powell, also of the Smyth County Circuit Court, presided over a hearing on protective orders. "She found Plaintiff hostile and dissolved her protective orders. Defendant Tim Keith testified falsely. Judge Powell held Plaintiff in contempt for leaving to attend a previously scheduled medical appointment for AFib and elevated blood pressure." (*Id.* ¶ 25.) Finally, Judge Simmons, also of the Smyth County Circuit Court, "presided over proceedings relevant to the pattern of conduct alleged herein." (*Id.* ¶ 26.)

Johnson gives no hint that any of this conduct was nonjudicial or "taken in the absence of all jurisdiction," *Mireles*, 502 U.S. at 11–12, so these judges are all absolutely immune to suit for damages in any capacity. *See Darling v. Falls*, 236 F. Supp. 3d 914, 928 (M.D.N.C. 2017) (collecting authorities). And Johnson alleges far too few particular facts to plausibly allege that any of these judges has violated or will violate her federal rights such that this court should issue injunctive relief under 42 U.S.C. § 1983. Johnson alleges that some of these judges improperly ruled against her, but this is simply not enough to state a federal claim against them; Johnson's remedy was to file state-court appeals of their decisions. Johnson fails to state a claim against these judges even for prospective relief.

## D. Private Actors

The Constitutional Amendments that Johnson invokes are almost never held to constrain private action. *See Lugar*, 457 U.S. at 936. And 42 U.S.C. § 1983 only creates liability for persons who violate them under color of state custom or law. To plausibly claim that a private person acted under color of state law, a plaintiff must particularly allege that the person had "a

14

sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions." *DeBauche v. Trani*, 191 F.3d 499, 506–07 (4th Cir. 1999) (requiring state coercion or significant encouragement).

Johnson also relies on 42 U.S.C. § 1985(3), which does provide a cause of action against private conspirators who purport to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  To plausibly state a claim under this subsection, a plaintiff must particularly allege, among other elements, a conspiracy motivated by a specific class-based, invidiously discriminatory animus.  *See A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).  The conspiratorial agreement or meeting of the minds must be alleged with "concrete supporting facts."  *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995).  And the class discriminated against must almost invariably be racial. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269–70 (1993) (declining to decide whether sex can form class); *Harrison v. KVAT Food Mgmt., Inc.*, 766 F.2d 155, 161 (4th Cir. 1985) (citing *Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1176 (10th Cir. 1983) (rejecting class of "handicapped persons")).

Johnson alleges that her adult daughter and two other individuals filed false charges against her and posted her address on Facebook.  (Am. Compl. ¶¶ 27–28.)  She also alleges that her neighbors discharged a shotgun toward her property, threatened her, obtained retaliatory protective orders against her, "installed a motion-activated panning camera that recorded [her] in her home and dressing area without consent," the footage from which led to a protective order and criminal complaint against her and to her arrest, and "own dogs that entered [her] home, destroyed her laptop, and killed her chickens without citation."  (*Id.* ¶¶ 29–32.)

15

Johnson offers no facts that could plausibly cast these alleged state torts as violations of her federal rights. A private individual allegedly lying in a state-court submission, firing a shotgun, peeping with a video camera, and failing to control his or her dogs all undoubtedly suggest the kernels of state claims, but, without more exceptional facts, they are not of a federal dimension. *See Lugar*, 457 U.S. at 936; *DeBauche*, 191 F.3d at 506–07. Johnson also attempts to allege a private conspiracy under 42 U.S.C. § 1985(3): "The conspiracy was motivated by class-based animus against [Johnson] as a disabled veteran and outsider"; "[o]vert acts in furtherance of the conspiracy included the filing of retaliatory protective orders, unlawful surveillance, and the filing of a false criminal complaint." (*Id.* ¶¶ 103–04.) But these overt acts do not give rise to a reasonable inference that these private individuals agreed to conspire against Johnson. *See Simmons*, 47 F.3d at 1377. And disabled veterans and outsiders do not make up a recognized class for § 1985(3) purposes. *See Bray*, 506 U.S. at 269–70. Accordingly, Johnson fails to state a claim against her daughter, her daughter's friends, and her neighbors.

**E. Southwest Virginia Regional Jail**

Johnson sues Southwest Virginia Regional Jail "for deliberate indifference to [Johnson]'s serious medical needs during her overnight detention." (Am. Compl. ¶ 33.) But a jail cannot be sued under 42 U.S.C. § 1983. *See Green v. Amherst Cnty. Adult Det. Ctr.*, No. 7:18-cv-00207, 2018 WL 6594569, at *2 (W.D. Va. Dec. 14, 2018). Johnson alleges nothing like the sort of official policy or custom that could support a claim against the Jail Authority. *See Saylor v. Sw. Va. Reg'l Jail Auth. (Duffield)*, No. 7:25-cv-00724, 2025 WL 3070923, at *1 (W.D. Va. Nov. 3, 2025); *Davis v. Lilly*, No. 7:23-cv-00152, 2023 WL 6565288, at *3–4 (W.D. Va. Oct. 10, 2023). And, in any case, Johnson's factual allegations—that she had diagnosed cardiovascular conditions but only received two blood-pressure readings while experiencing atrial fibrillation

with chest pain—fall short of the particularity required to plead deliberate indifference to a medical need. *See Short v. Hartman*, 87 F.4th 593, 611–12 (4th Cir. 2023) ("[I]t is . . . not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee."). Accordingly, Johnson's claim against the Jail cannot proceed.

IV.  CONCLUSION

Johnson's motion to proceed in forma pauperis (Dkt. Nos. 2, 29) will be granted. But she fails to plausibly state a federal claim on which relief may be granted against any defendant, so the court has no supplemental jurisdiction over her Virginia state claims and must dismiss them. 28 U.S.C. § 1367(a). Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the court must dismiss her amended complaint. The dismissal will be without prejudice to filing a second amended complaint. And, because the case will have to proceed, if at all, on an entirely new pleading, the court will deny Johnson's other motions as moot.

If Johnson wishes to amend her pleading to bring plausible claims against any defendants who, she believes, are liable to her for a violation in common of her federal rights and any supplemental state-law violations, she will be free to do so. Her second amended complaint must stand independently, without relying on any prior filings.

A consistent order will be issued.

Entered: July 15, 2026.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge

17